Next matter is Holley v. Commissioner of Social Security Good morning, Your Honor. John Dubin, Rutgers Law School Civil Justice Clinic with third-year clinical law students Charles Simmons and Jill Caffrey. I work counsel for the appellant Anita Holley. You know, the students argue that that's not fair. They go to work, they don't even get to argue. If they weren't graduating tomorrow and had finals last week, one of them would be here. You have to squeeze this in somehow. Perhaps one of them will come to my rescue, Your Honor. Okay, all right. This is an SSI disability appeal. Ms. Holley raises two principal grounds of error on appeal, both of which reflect failure to properly apply this Court's precedential decisions. First, the agency failed to satisfy its burden of proving jobs to which Holley could perform since the hypothetical questions of the vocational expert did not include Holley's undisputed limitation, moderate limitation, on concentration, persistence, and pace in the hypothetical. Just as in Ramirez, the ALJ did not include a restriction to, often a restriction in concentration, persistence, and pace in that hypothetical, and this Court remanded on that basis.  important findings in Ramirez which are equally applicable to this case. First, this Court found that a claimant's restrictions in concentration, persistence, and pace are not inherently accounted for. They're production output and speed-based restrictions that aren't accounted for solely through skills-based hypotheticals. I wasn't sure the ALJ accepted the claim that the person's lack of concentration was as great as the petitioner was saying it was. Well, she made an undisputed finding that the limitation was moderate, and moderate is defined as more than slight and less than marked, but it's certainly more than slight, which means it's not trivial. It means it proceeds beyond the second level of review. It has a significant impact on work-related functions, and therefore it needs to be evaluated, just as it needed to be evaluated in Ramirez. So this Court found that a skills-based restriction doesn't account for, even if it's a low skill, doesn't account for a moderate restriction in concentration, restriction in concentration, persistence, and pace because they're production output and production speed-based restrictions. In other words, no matter how simple a job may be, they have output and speed requirements which are compromised by concentration, persistence, and pace limitations which ought to be vocationally evaluated for their impact on job performance. Secondly, this Court recognized in Ramirez that once the burden of proof shifts to the agency to demonstrate jobs to which the claimant can adjust, it's enough to show that the vocational expert might have reached a different result if the concentration, persistence, and pace production output and speed-based restrictions are included in the hypothetical. The claimant doesn't need to prove a negative. And then the third very important principle from Ramirez was this Court's express rejection of the agency's national position that restrictions on concentration, persistence, and pace in the B criteria of the psychiatric review technique at steps two to three of the five-step sequential evaluation process should never be included in hypotheticals to the vocational expert when the ALJ's ultimate residual functional capacity assessment because those restrictions are only broad areas of function. They're not functional restrictions in and of themselves. This was the agency's reading of Social Security Ruling 96-8-P. The Court expressly rejected that position in Ramirez. We have a situation where the ALJ, not in the testimony as much as in the written interrogatory, stated that he had reviewed the entire record and then clicked off those little yes, no, yes, no boxes. But isn't the record adequate to support that the AL, the vocational expert, did consider the kind of limitations, assuming that they're there and not contested? That the ALJ did, not the ALJ, the vocational rehab, vocational expert job, did consider those? No. The reason it's not adequate is all the vocational expert was given was a limitation to jobs that are learnable in 30 days. That's a skills-based restriction. And as this Court made clear in Ramirez, skills-based restrictions do not account for production output and production speed-based restrictions that are produced by limitations in concentration, persistence, and pace. That is, no matter how simple a job may be, there's still production requirements, there's still speed requirements, and they're not accounted for. Those types of restrictions should have been provided to the vocational experts, so the vocational expert, who was the only source of vocational evidence in this case, could determine whether the jobs are compromised through inclusion of this additional restriction in concentration, persistence, and pace. That's the proper interpretation of Ramirez. Now, I mentioned that this Court rejected the position that these concentration, persistence, and pace restrictions never get into the hypothetical, found that it was a cramped reading of the Social Security ruling and regulations. I should point out that this Court's decision has been followed in the 7th and 11th Circuits, the Stewart and O'Connor decisions in the 7th Circuit, the Winchell decision in the 11th Circuit. The agency forcefully articulated this position, that concentration, persistence, and pace restrictions never get into the vocational expert hypo. And it's briefly Ramirez. One of the questions being asked of the vocational expert is, assume a hypothetical individual with a claimant's vocational profile, and assume further that I find she can sit for only 15 minutes at a time and eight hours a day, can stand, she can walk, never climb stairs, and then goes on to basically say that assume the individual has the physical limitations of this petitioner, and then ask about jobs. And a couple of those jobs, the expert did say, no, there are no jobs available. That's right. And I'm having trouble finding the support in the record for the absence of the kinds of traits and characteristics that you're saying were not included in the hypothetical. Well, there's no mention in the hypothetical of the undisputed, moderate restriction on concentration, persistence, and pace. It's just absent. No, the expert did say that he had consulted the entire, the profile of the individual. But that's not in the profile. This was in the finding of the administrative law judge after the hearing. So the vocational expert was not privy to the administrative law judge's finding of moderate restriction on concentration, persistence, and pace. That finding should have been sent to the vocational expert, so the vocational expert could determine, just as in the Ramirez case, whether that compromised the jobs. What this court said in Ramirez was many employers require a certain output level from their employees over a given amount of time, and an individual with deficiencies in pace might be able to perform simple tasks, but not over an extended period of time. If this had been included in the hypothetical, the vocational expert may have changed their answer as to whether there were jobs in the local or national economy that Ramirez could perform. That is the same situation in this case. I should point out that the agency's position has been rejected by this court. The rejection of that position has never been communicated to the ALJs and adjudicators who have to decide these cases. That's because under the agency's rules, third circuit decisions, in fact, all circuit court decisions, its adjudicators are prohibited from considering them unless they're embodied in acquiescence rulings. Even though this court rejected the agency's interpretation of its policy of never including concentration, persistence, and pace restrictions in vocational expert hypotheticals, this position was not communicated, this rejection by this court was not communicated to the adjudicators, which reflects two things. One, that the agency is unconstitutionally non-acquiescing in this court's Ramirez decision in violation of separation of powers principles, and secondly, that the ALJ in this case did not have the benefit of Ramirez and an interpretation of Ramirez, so the agency's effort now to supply a new approach to Ramirez is a post hoc position in violation of the Fennery Doctrine. I should point out that the position that's been asserted by the agency on appeal is somewhat different. Now they are asserting what they described as a middle ground position reflecting a nuanced interpretation of Ramirez, under which concentration, persistence, and pace restrictions are sometimes included in the hypothetical and sometimes not. I think this new position raises more issues than it clarifies because the agency still fails to supply any indication of the circumstances when, if ever, these restrictions must be included in the hypothetical. Also, I think the new position reflects a violation of vocational evidence and administrative notice principles with respect to the ALJ's assumption of vocational conclusions without competent vocational evidence or proper indication of the administrative notice doctrine as this court recognized and established in the Sykes v. Apfel case. In Sykes, this court held that when a claimant has non-exertional limitations, the administrative law judge might not simply presume that the non-exertional limitations have no impact on the grid's exertional job base, job bases like sedentary work, without competent vocational evidence or without proper invocation of the administrative notice doctrine, which requires the right to rebut. So, for example, in Sykes, the fact that the claimant in Sykes had monocular vision, one-eyed blindness, could not be written off as not limiting the job base at a particular skill level. By the same token here, there is no vocational evidence in the record supporting the presumptive leap with respect to the impact on the occupational base of concentration, persistence, and pace restrictions. For the ALJ to simply presume that. Yes, I have five minutes. Good morning, your honors. May it please the court. My name is Emily Fishman on behalf of the Commissioner of Social Security. Your honors. You're not a student, right? No, I'm not. You could have fooled me. I don't know what it means by that remark about your age and the extent to which you show it. I do get that a lot, but no, I'm not a student. Holly's main argument in this case is that remand is appropriate on the basis of her mental impairment. Now, here, the ALJ probably. It's undisputed that she has these non-physical restrictions in which she can do her job. Do you concede that? No, your honor. We concede that Holly was found to have a severe, or I should say two severe mental impairments for purposes of step two, and in connection with that analysis, the ALJ found that she had limitations in the broad category of maintaining concentration, persistence, or pace. That is a nonspecific finding. It relates to one of the four broad categories used for purposes of the psychiatric review technique. Where is that limitation reflected in the hypotheticals that were asked? I'm getting to that, your honor. Okay. I'm sure you are, but I've got this thing in my wrist called a watch. Sure. I'm committed to it sometime today. Yes, absolutely. Where in the hypothetical are those restrictions reflected in the question? After finding for purposes of step two that Holly had limitations in that category, the ALJ then went on to conduct a more precise evaluation of Holly's actual limitations resulting from her impairments, and that is what ultimately got factored into the hypothetical question. Where is that in the hypothetical? That was the limitation to tasks that could be learned in 30 days or less. That's different. That's different than a very simple task that anybody can learn. It doesn't require some kind of prolonged concentration, and a task that does require prolonged concentration even though it can be learned in 30 days. Some jobs are easy, you can learn in 30 days, but you've got to be able to concentrate on the job. Other jobs, that's not true. I'm trying to find out where in the hypothetical. Just point me to a page in the appendix where the language appears in the hypothetical, either by the vocational expert saying, well, consider all this stuff, or by the ALJ including it in the question that was asked. Well, Your Honor, while the two are not synonymous, someone who has deficiencies in the broad category of maintaining concentration, persistence, or pace, which is really a nonspecific finding used for purposes of Step 2 of the sequential evaluation, could then more specifically be able to concentrate on certain more simple structured tasks. Where in the hypothetical are those limitations included? They're not precisely included in those words, and our argument, Your Honor, would be that they should not be. Where are they implied? The limitation to jobs that can be learned in 30 days or less reflected Hawley's precise limitations as established by the medical records, most importantly through Dr. Figarelli's report. Now, if you look at Dr. Figarelli's findings, he found that Hawley, in fact, could sustain concentration for structured tasks of relatively short duration, and based on his overall analysis of Hawley's functioning, he found that she would, in fact, be able to perform his precise finding, where she could understand, remember, and carry out simple... Where in the appendix does Dr. Figarelli say that? This is in Dr. Figarelli's report. I believe it's page 447 of the administrative transcript. You know what that translates into in appendix pages? I'm sorry. I don't have the appendix reference. Maybe you can do a 28-year letter and provide us with that. I can find the reference. We can just do a 28-year letter and send it to us. You don't have to do it right now. Okay. Sure. You also said it didn't have to be included. Why is that? The finding of limitations of concentration, persistence, or pace is a broad category used for purposes of the psychiatric review technique, and it could really mean any of a number of things. In fact, the phrasing of the category in the disjunctive indicates that those limitations could be in concentration, could be in persistence, could be in pace. It really doesn't mean any one specific thing or any of the number of functional limitations that might fall into that broad category. And that's why Social Security ruling 96-8P is very clear that those findings are not the residual functional capacity assessment. And what the ALJ is actually required to do later on in the residual functional capacity assessment is itemize and determine the claimant's more precise functional limitations, and it's those precise functional limitations that ultimately get incorporated into the RFC. Is what you're saying consistent with our Ramirez opinion? Yes. Or you'd say no. No, absolutely it is, Your Honor. What the court held in Ramirez was that all of the claimant's impairments had to be properly accounted for through a detailed analysis. What the court was looking for in Ramirez was great specificity, was the level of detailed analysis required by SSR 96-8P. And that was really the court's problem in that case. The sufficient detail, the articulated analysis was what was missing. And that's why the court didn't see how it was that the ALJ could have gotten from limitations in pace, in Ramirez's case, to simple one- or two-step tasks. That detailed analysis and sufficient articulation was missing. I guess you got the adult version. She didn't check that off. She was asked, check any of the following items, your illness, injuries, or conditions of effect. She did not check off concentrations. She checked off throat climbing, memory, kneeling, sitting, walking, using hands, standing, bending, squatting, and lifting. I'm sorry, Your Honor, which report are you referring to? I just saw it quickly. It looks like it's called an adult function report. That's the language on the heading that pops up. I'm sure you've got a form number that I'm not at all familiar with. Oh, here it is, SSA 3373. So you probably just call it, as all good government attorneys do, breaking things down to the lowest common denominator, a 3373. It sounds like 3373. And was this Dr. Figarelli's report? No, this is a report that claimants apparently are asked to, are given, and asked to check off those things that affect their ability to function. Oh, this is Holly's. I, okay. Okay, I understand. What do you call that form? Yes, that is a 3373. I'm sorry. Okay, okay. I got it. 3373, all right. She didn't check off concentration. No, actually, it's quite telling, Your Honor, that Holly actually didn't even allege any mental impairment when she first applied for disability. You know, we're here arguing about semantics over a claimant's limitations in concentration, persistence, and pace who didn't even allege a mental impairment when she first applied for disability, who sought no psychiatric treatment, who was not taking any psychiatric medication, who admitted that her activities of daily living were in no way impaired by any psychiatric limitation. And so, essentially, when we're looking at the question of substantial evidence, Dr. Figarelli's findings are the only thing that the ALJ really had to go on in this case in terms of clinical findings relating to Holly's mental impairment. And if you look at the clinical findings, they're actually quite telling. Dr. Figarelli found that Holly would be able to engage in structured tasks of relatively short duration. She was able to complete serial fives without error, which also evidences an ability to concentrate. She was able to focus on Dr. Figarelli's verbal instructions, and she remained alert and oriented and compliant throughout the exam. And based on all of these observations, Dr. Figarelli actually found that Holly did retain the ability to understand, remember, and carry out simple tasks, the very sort of simple tasks that the ALJ limited her to performing in the RFC by finding she could perform work learnable in 30 days or less. Now, who is Dr. Sorin, Roman Sorin? His name appears on something called an additional PMR evaluation. Dr. Sorin, I believe he was one of the treating physicians. Okay. And I ask that because under the mental status examination, attention span and concentration are as underlined in Roman on page 462 of the appendix. Right. Again, Your Honor, Holly bears the burden of proof on the issue of disability, and there is really nothing that Holly can point to other than raising this conceptual argument regarding the meaning of limitations in the broad category of concentration, persistence, or pace. There's really no specific evidence that she can point to to indicate that she would not be able to concentrate on short, structured, simple tasks or to show that she had any output or production speed type of limitations, as her counsel is now suggesting. It's simply not there in the record, and the ALJ's findings were supported by substantial evidence, most specifically Dr. Figarelli's report. Now, significantly, the ALJ based her residual functional capacity assessment and the corresponding hypothetical question that she posed to the vocational expert directly on Dr. Figarelli's report. And I do want to note that in finding that Holly was limited to tasks that could be learned in 30 days or less, this actually speaks directly to the finding that she could perform simple tasks. Unskilled work is defined in 20 CFR 416-968A as work that can be learned in 30 days or less, and that, in turn, is defined to involve these very sort of simple tasks that Dr. Figarelli found that Holly could perform. And in turn, when this question was posed to the vocational expert, the expert understood this as a limitation to unskilled work and named a variety of unskilled jobs that Holly would be able to perform. And so the ALJ's finding that Holly was not disabled was based directly on the medical evidence and the vocational expert testimony, and therefore was supported by substantial evidence. Now, what Holly essentially is proposing here is something like a bright line rule, a finding that because there is a statement of limitations in the broad category of concentration, persistence, and pace earlier on in the sequential evaluation, that that needs to translate into a direct inclusion of either that very language directly in the RFC or some kind of production output or speed-based limitation. And the commissioner's argument is that Ramirez does require something more nuanced. What Ramirez requires is a detailed analysis that properly accounts for the plaintiff's impairments and renders an RFC determination that precisely captures the claimant's limitations. But what that needs to look like in each particular case, well, that's going to vary case by case. It's going to depend on the actual medical facts in the record and what is borne out by that in terms of the claimant's precise functional limitations. Now, that isn't to say that the findings at steps two and three regarding concentration, persistence, and pace play no role. There are impairments relevant to making that finding, and those same impairments need to be evaluated throughout the sequential analysis so that when it comes time to making the RFC finding, the ALJ ultimately does analyze the claimant's impairments precisely and come up with her actual functional limitations. So in that sense, they play a role. But it's not this bright-line rule that A leads to B without a more specific analysis of the evidence itself. It's important to remember that Holly's case is distinguishable from Ramirez. Ramirez had deficiencies specifically in the area of pace that prohibited or made it difficult for her to be able to complete tasks in a timely manner. And so the court really couldn't see how it was that the ALJ could get from there, from deficiencies in pace, to completing one or two step tasks. That didn't make sense, and the articulation was missing from the ALJ's decision, and the record just didn't bear that out. But the facts are quite different in Holly's case. Here, the ALJ relied directly on Dr. Figarelli's report. Dr. Figarelli analyzed Holly's ability to concentrate. He found that she could concentrate on structured tasks of relatively short duration, even though she did have some difficulties with delayed recall and perhaps more complex tasks. And he therefore limited her accordingly, and the ALJ's finding was based directly on that evidence. Thank you. Thank you. The agency argues that there's a more precise evaluation, which somehow translates the production output and speed-based concentration, persistence, and pace restrictions into entirely skills-based restrictions on jobs learnable within 30 days. I think it's ironic to make the suggestion that it's more precise and more detailed when it omits the most important detail with respect to that limitation, which is that it's production output and speed-based. It would be one thing. Where that limitation is in the record, because it looks like from the forms that Holly checked off, she's not claiming problems with concentration and persistence. It's not uncommon. We run a free clinic in central Newark. It's not uncommon at all for low-income people who don't have regular medical care, who apply for disability to allege solely physical conditions and to be completely unaware of what might even be in many instances quite severe or more severe psychiatric impairments. That's quite common. But what's also clear in this case is that the ALJ looked at all the evidence in the record, including Dr. Figarelli's assessment, and made an undisputed finding of moderate limitations in concentration, persistence, and pace, and made that finding twice. Where is the finding? Where is the finding? The findings are in the ALJ's decision. I think it's 22 and 32. The finding was made twice in the record. It's undisputed. So whatever can be said about Dr. Figarelli's report, it didn't prevent the ALJ from making this finding, and it's that finding that the ALJ's actual finding is what needs to be included in the hypothetical. That's what this court found in Ramirez. The arguments you're hearing today are the same arguments that were pitched to the court in Ramirez, which this court rejected. This court rejected the notion that a more precise or detailed evaluation, which omits the production output and speed-based restrictions, is, in fact, more precise or detailed. It rejected the argument that concentration, persistence, and pace restrictions are only broad areas of function, which never get into the vocational expert hypothetical. And, again, that's a position. The rejection of that position has never been communicated to the agency's adjudicators. So across the board, they're categorically precluding these types of limitations from the hypotheticals. Going back to Dr. Figarelli's statement, I'd also point out that his finding that he had some concentration for structured tasks of short direction is still not enough to rule out the symptomology here. A vocational expert should have been given information in order to assess whether the lack of concentration on tasks of longer duration, he found problems in delayed recall, for example, would affect the jobs identified. All these jobs require consistent performance, eight hours per day. Also, he spoke only to structured tasks. The inability to concentrate for unstructured or less structured tasks should have been communicated to the vocational expert. In addition, the firm record contains a variety of conditions, not only the psychiatric, that impair concentration. The record contains evidence that the claimant's quite severe and well-documented spinal pain, which was validated by the agency's own medical advisor at the hearing, interfered with her concentration. She's also taking – I'd like to interrupt you. I'm trying to find Paragraph 22 and 24. They're not in the finding. It stops at Paragraph 9. Reading from the ALJ's finding, the claimant had no deficits with immediate recall or with sustained concentration on structured tasks of relatively short duration. Maybe you can, again, do a 28-Jeller. You don't have to take your time now, but if you can direct us to exactly where that finding is. Sure. I think it's undisputed that – Well, you say it's undisputed. That doesn't make it undisputed. She's saying it doesn't exist. You're saying it exists, and therefore it's undisputed. That's why we have these things called a record. And I'm asking you where in the record it is. You're telling me it's on Paragraph 22 of the ALJ's finding? The ALJ's finding ends at Paragraph 9. So just send in a 28-Jeller. 66 and 72, I'm sorry. I'm sorry, where is that? At Page 72, the ALJ finds moderate difficulties in concentration, persistence, and pace in the record. And that's also at Page 66. Okay, well, I thought that's what I was just reading. 66 and 72, I'm sorry. 72 is 32 in the transcript, but it's 72 in the appendix. And it mentions that finding, the finding that was made twice. And I would point out as well that there were three different conditions here. There's also distracting effects of the spinal pain, which was credited by the agency's medical advisor at the hearing. Let me tell you a little bit of the text, because I'm reading from Page 72. It says, quote, the claimant had no deficits with immediate default or with sustained concentration and structured tasks of relatively short duration. Now maybe there's a problem when you get a task that is not relatively short duration. Maybe that's what you're referring to. Yes, that's right. And at the bottom she says, I find she has a mood disorder with restriction of daily activities, moderate difficulties in maintaining social function, moderate difficulties in maintaining concentration, persistence, and pace. That's her finding at 72, and that's her finding at Page 66 at the top. The claimant has mood disorder, personality disorder, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, and pace. The AHA has made that finding twice after reviewing all the evidence of record, including the spinal. Page 72, and I'm not finding it. But, again, you can just cut and paste it into a 28-J letter. It will be easier to find. I'm trying to listen to it also scanned through the appendix. Go ahead. I'm sorry. Beginning of the first paragraph. Page 72? On Page 66. And on 72, it is in the 1, 2, 3, 4, 5. It's in the middle of the fifth paragraph on 72. Okay. Okay. Okay. Just to sum up, if I may, there's a simple fix for what happened in this case, a simple interpretation of Ramirez. And all the agency needs to do is add one additional sentence to the hypothetical. That would add fairness to claimants, clarity for vocational experts, more meaningful judicial review for this court, and no meaningful additional burden on the agency. Thank you. That's what Ramirez requires. Okay, thank you. And I want to thank the clinical directors, as they did in the last case, for taking these cases on and for helping us out and for agreeing to take cases pro bono. I will mention to the students, when you're able to argue, let judges ask questions during your argument. So to the extent you learn from this as a learning experience, take that away. Let judges ask their questions when you get up to argue. It would take matter and advisement.